**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTEEN SMITH,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>UNITED STATES GYPSUM COMPANY,<br><br>　　　　　Defendant | CIVIL ACTION NO.4:13-CV-02122<br><br>(BRANN, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

Pending before this Court is a Motion for Summary Judgment (Doc. 15), filed by Defendant United States Gypsum Company. For the reasons provided below, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** as to Plaintiff's Title VII claim, and that the Court decline to exercise its supplemental jurisdiction over Plaintiff's Pennsylvania Human Relations Act claim.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Christeen Smith ("Smith") is a former employee of United States Gypsum Company ("USG"), a wallboard production facility located in Washingtonville, Pennsylvania. (Doc. 17). On August 9, 2013, Smith filed a complaint in this Court alleging that USG discriminated against her on the basis of her gender after USG terminated her for her failure to properly disclose prior convictions on her employment application. (Doc. 1). She brings these claims pursuant to Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1).

On October 4, 2011, Smith completed an application for employment with USG. (Doc. 16-9, at 253). As a part of this application, Smith was required to certify that her responses were accurate and complete, and that "false or incomplete statements [would] be grounds for

disqualification or dismissal from employment, no matter when discovered." (Doc. 16-9, at 253). The employment application asked Smith to disclose any prior convictions, to which she responded in the affirmative, but indicated on the application that she would explain the circumstances of the conviction in the interview. (Doc. 16-9, at 249). USG alleges that Smith explained to its human resources manager during her interview that she was a victim of domestic violence and was convicted of assault for threatening to kill her abusive boyfriend in the presence of a police officer who had been called to investigate a domestic dispute. (Doc. 17). USG hired Smith despite the conviction, and she began employment as an Operator in the Quality Department at USG on December 5, 2011. (Doc. 16; Doc. 17).

In February of 2012, USG management discovered that Smith had been incarcerated for two years on charges of aggravated assault for paying an undercover officer $500 to murder her boyfriend. (Doc. 17; Doc. 20). USG alleges that while a background investigation was conducted, Smith's conviction was omitted from the background check. (Doc.16-9 at 290). In light of this new information, USG placed Smith on suspension and ultimately terminated her for providing false and misleading information during the hiring process (Doc. 17). Her termination prompted the present action. Currently before this Court is Defendant's Motion for Summary Judgment, filed on July 25, 2014 (Doc. 15), Plaintiff's Brief in Opposition, filed on August 15, 2014 (Doc. 21), and Defendant's Reply Brief, filed on August 29, 2014 (Doc. 22). This matter is now ripe for disposition.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Essentially, "the employer must persuade [the court] that, even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir.2008) (citations omitted).

The court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, (1990). In deciding a motion for summary judgment, the court must not make credibility determinations,

weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court is limited to a determination of "whether there is a genuine issue for trial." *Id.*

### B. TITLE VII CLAIM

Smith argues that USG "discriminated against Plaintiff, a female, *because of her criminal record*." (Doc. 21, at 19) (emphasis added). Title VII "prohibits discrimination with respect to 'compensation, terms, conditions, or privileges of employment because of . . . sex." *Vernon v. A&L Motors*, 381 Fed. Appx. 164, 166 (3d Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)). In a motion for summary judgment in a case alleging discrimination under Title VII, the Court must apply a three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, Smith "bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence." *Id.* at 802. "The elements of a *prima facie* case depend on the facts of the particular case" and "cannot be established on a one-size-fits-all basis." Thus, "the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797–798 (3d Cir. 2003). If the plaintiff "fails to establish a *prima facie* case of discrimination, then summary judgment in favor of defendant is appropriate." *Fullman v. Potter*, 480 F.Supp.2d 782, 790 (E.D. Pa. 2007)(citing *Sarullo,* 352 F.3d at 797). If the plaintiff has established a *prima facie* case, the burden then shifts to the defendant "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). This burden is "relatively light." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Once the defendant has presented a legitimate justification for its actions, "the burden of production [shifts] back to the plaintiff to provide evidence from which a reasonable factfinder could infer that the employer's proffered justification is a pretext for discrimination." *Taylor v. Harrisburg*

*Area Cmty. Coll.*, No. 1:12-CV-0169, 2014 WL 347036, at *8 (M.D. Pa. Jan. 30, 2014)(citation omitted).

Although Smith alleges Title VII discrimination based on gender, she fails to establish a *prima facie* case necessary to overcome a motion for summary judgment. To establish a *prima facie* case of discrimination, Smith must show: "(1) that [s]he is a member of a protected class," (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that her termination occurred "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filed by a person not of the protected class." *Jones v. Sch. Dis.of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999) (citations omitted). USG does not dispute Smith's ability to establish the first and third elements (Doc. 16), but does dispute whether she has met the second and fourth prongs of the *prima facie* case. As it relates to the second prong, there is a dispute as to whether Smith was qualified for the position. (Doc. 16). While Smith was presumably qualified for the position at the time of hire, USG submits that later discoveries as to her criminal background disqualified her. *See White v. Planned Sec. Servs.,* CIV.A. 10-2017, 2011 WL 6258307 (E.D. Pa. Dec. 15, 2011) *aff'd,* 480 F. App'x 115 (3d Cir. 2012) (noting that while plaintiff was qualified for the position at the time of hire, his later activities "arguably . . . disqualified him"). However, Smith has established that she received a positive evaluation during the time she was employed for USG, (Doc. 16-9, at 154), and USG concedes as much (Doc. 16, at 16). Thus, for purposes of this analysis and in viewing the facts in the light most favorable to Smith, the Court finds that the evidence in the record sufficiently establishes that Smith was qualified for her position. As such, the Court now turns to the fourth requirement.

The fourth prong of Smith's *prima facie* case requires a minimal showing that the adverse employment action occurred under circumstances creating an inference of discrimination. "Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Klimsczak v. Shoe Show Companies*, 420 F.Supp.2d. 376, 382 (M.D. Pa. 2005)(quoting *Bullock v. Children's Hosp. of Phila.*, 71 F.Supp.2d 482, 487 (E.D. Pa. 1999). While these circumstances are not required to be proven, the circumstances offered must reflect "the 'central focus' of the *prima facie* case of gender discrimination[, which] is always whether the employer is treating 'some people less favorably than others because of their . . . sex . . . .'" *Sarullo*, 352 F.3d at 798 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

As an initial matter, it is undisputed that USG replaced Smith with someone within the protected class. (Doc. 17).[1] Indeed, Smith as replaced by a female. While this is not necessarily a determinative factor in the ultimate inquiry of whether Smith was a victim of gender

---

[1] Smith avers that USG replaced her with a female, but argues that USG has not proven that the female hired to replace Smith had a criminal record as well. This argument lacks merit. Smith has the burden to prove, by a preponderance of the evidence, that the circumstances surrounding her termination created an inference of discrimination. Smith appears to be advancing some form of a "gender plus" discrimination theory by arguing that she was "discriminated against as a female with a criminal record," and as such, was treated differently than other female employees by nature of her criminal record. However, the reasoning behind establishing a sex-plus discrimination theory is to allow Title VII plaintiffs to survive summary judgment when the defendant employer does not discriminate against *all* members of that sex. The "plus" classification here must be based on an immutable characteristic or the exercise of a fundamental right, such as a right to marriage. The subclass advanced here, women with criminal records, does not find support in case law or the language of Title VII.

discrimination, it is certainly a relevant consideration. Indeed, "this fact does not, as a matter of law or logic, foreclose the plaintiff from proving that the employer was motivated by her gender . . . when it discharged her." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d at 354.

Aside from the evidence of her replacement, Smith has sought to show an inference of discrimination by arguing that USG treated non-members of the protected class more favorably. To prevail on this argument, a "plaintiff must show that others similarly situated to [her] in all relevant respects were treated differently by that employer." *Red v. Potter*, 211 Fed.Appx. 82, 84 (3d Cir. 2006)(quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003)). The employees need not be "identically situated," but they must be similar in "'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 Fed.Appx. 220, 223 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). "The focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." *Simpson v. Kay Jewelers*, 191 F.3d 344, 359 (3d Cir. 1999). This is "a fact-intensive inquiry based on a whole constellation of factors." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 306 (3d Cir.2004). Generally, some factors to be considered are whether "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *McCullers v. Napolitano*, 427 Fed.Appx. 190, 195 (3d Cir. 2011) (per curiam) (emphasis added) (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000)).

Here, Smith has merely argued that various male employees were permitted to continue employment with USG with criminal records. She not proffered evidence advancing an argument that these male employees were located within her department, were subject to the

7

same standards or dealt with the same supervisor. More importantly, she has failed to establish that these employees engaged in the same type of conduct, such as falsifying information during the application process or maintaining a similar criminal record. See *Pivirotto*, 191 F.3d at 359 (holding that a plaintiff, who was terminated for "blam[ing] others for problems in the sales organization," failed to establish circumstances giving rise to an inference of discrimination because the male employee was not reprimanded for his "tendency to blame others," and thus, was not similarly situated). Specifically, Smith has not provided evidence that male employees were permitted to continue employment with USG after accusations were made regarding falsified or misrepresented information during the application process. Rather, USG, in support of its motion for summary judgment, has pointed to five male employees who were terminated for providing false and misleading information during the hiring process. (Doc. 16, at 8). Smith has not pointed to any evidence in the record establishing that USG retained a male employee with aggravated assault convictions, or similar violent crime convictions. USG has established that eight current employees with criminal records were charged with crimes ranging from disorderly conduct to driving under the influence and that one of those employees is female[2]. (Doc. 16, at 319). Further, the evidence in the record includes USG's Criminal Conviction Guidelines (Doc. 16-9, at 19), used by its human resources department in making hiring

---

[2] USG lists eight individuals convicted of various crimes in the last ten years who were employed by USG. (Doc. 16, at 319). In particular, one male employee was charged with misdemeanor disorderly conduct in 2007, but was terminated for violating USG's attendance policy. Another employee was charged with disorderly conduct but was permitted to continue working for USG. Six employees were convicted of driving under the influence. One of those employees is female. They are still employed by the company. No employee was convicted of aggravated assault.

determinations. These guidelines assess whether an employee should be considered for hire based on the severity of the conviction and the length of time that has passed since the conviction. The guidelines indicate that a candidate with an assault conviction occurring within one to seven years should be denied employment. However, a potential candidate with a DUI conviction within one to four years should be considered depending on the circumstances. A potential candidate with a DUI conviction within four to seven years should not be barred from employment with USG. A candidate with a disorderly conduct conviction within one to seven years should be considered for employment after further review. According to USG's own guidelines, they do not treat these convictions as offenses similar to Smith's. Smith's argument that these employees are somehow similarly situated lacks merit. As such, Smith has not met her burden of showing how similarly situated male employees have been treated more favorably than she.

Moreover, it should be noted that Smith indicated in her own deposition that she does not believe that her gender played a role in her termination. In relevant part, her deposition testimony is as follows:

Q: So why are you suing the company then?

A: Because they did a background check on me and hired me. Two months after . . . me working there . . . somebody mentioned . . . my newspaper article and then they put me on suspension from it and fired me and I feel personally that it was more due to publicity than it was the actual background check and if somebody didn't do the background check, well, that's not my fault, that's their fault for not—from what I understand I guess there was a—someone didn't do it or whatever, I don't know, but my only think is is you don't hire somebody than then turn around and then fire them for the same thing that they wrote on their application that I had a felony that I would discuss later. I was completely honest and I don't feel they were very fair to me.

Q: So you think the company fired you because of a publicity issue?

A Yes, I do.

> Q: Any other reasons?
>
> A: No

(Doc. 16-9, at 68).

Considering her deposition testimony, together with the other undisputed evidence in the record, Smith fails to make out a *prima facie* case of gender discrimination, as she does not believe her gender played a role in her termination. See *Slater v. Susquehanna Cnty.*, No.3:07-CV-2304, 2011 WL 607452, at *5 (M.D. Pa. Feb. 15, 2011)(granting a summary judgment motion in favor of defendants because plaintiff failed to show how her termination gave rise to an inference of gender discrimination when plaintiff admitted in her deposition testimony that she "'didn't know' whether she believed she had been fired because of her . . . gender"). While her testimony alone would not preclude an ultimate determination that an inference of discrimination exists in this case, the evidence viewed as a whole suggests that the circumstances surrounding USG's decision to terminate do not create an inference of discrimination.

In considering the aforementioned findings, along with the entire record, this Court maintains that Smith has failed to satisfy her burden of setting forth a *prima facie* case of discrimination. Smith suggests, without making the argument, that there is a connection between her termination, which she concedes was based on her criminal record, and her gender. There is simply nothing in the record to support an inference of discriminatory animus. Upon review of the record, this Court cannot find any established causal nexus between Smith's membership in the protected class and the decision to terminate her that would give rise to an inference of discrimination. See *Vernon v. A & L Motors*, 381 Fed.Appx 164, 168 (3d Cir. 2010). To require the Court to draw the necessary inferences to establish that she was terminated

because of her gender is something this Court cannot do. Accordingly, Smith has failed to establish a *prima facie* case of discrimination sufficient to survive summary judgment.

Even assuming, *arguendo*, that Smith had established a *prima facie* case of discrimination, USG has nevertheless rebutted the presumption, as it has produced a legitimate, nondiscriminatory justification for terminating Smith. In order to satisfy its burden of production, the defendant need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). USG has satisfied its burden at this stage by articulating that Smith was terminated because of misrepresentations made throughout the hiring process with respect to her criminal background. (Doc. 16). USG's employment application specifically reserves the right to terminate an employee for misrepresentations provided on the application. (Doc. 16-9, at 253). Further, "USG treats criminal convictions on a case-by-case basis; convictions do not automatically disqualify a person for employment." (Doc. 16, at 23). Thus, USG has satisfied its burden by producing a legitimate, nondiscriminatory reason for Smith's termination.

As USG has articulated a legitimate, nondiscriminatory justification for the termination, the third step of the burden shifting *McDonnell Douglas* framework requires that Smith must be given "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)(citations omitted). In particular, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause

of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Specifically, the Third Circuit Court of Appeals has noted that "factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey*, 996 F.2d at 638-39. While recognizing that these two prongs of the *Fuentes* test are distinct, the Court will briefly address these prongs together, as Smith has failed to even establish circumstances creating an inference of gender discrimination required to set forth a *prima facie* case of discrimination.

As described above, Smith has failed to set forth any evidence that gender was a factor in USG's termination decision. The first prong of the *Fuentes* test pertains to whether Smith has submitted evidence from which a fact-finder could reasonably disbelieve USG's articulated legitimate reason for discharging her. To satisfy this prong and to discredit USG's proffered reason, Smith must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765. Here, Smith has not provided this Court with any evidence to allow a reasonable factfinder to find that USG's legitimate, nondiscriminatory reasons for her termination either were fabricated or did not actually motivate her termination. As the Third Circuit explained, "[t]o discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997). Moreover, "'federal courts are not arbitral boards ruling on the strengths of 'cause' for discharge. The

question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.'" *Id*. (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996)).

In the present case, Smith attempts to establish pretext by pointing to numerous "inconsistencies" in the factual record before this Court. Specifically, Smith alleges that she believed her termination arose from the potential publicity the company would receive due to the discovery of a newspaper article detailing her arrest and conviction. (Doc.16-9, at 68). She alleges that a supervisor indicated to her that she would not have been hired at all had they discovered her criminal conviction when first interviewing her. (Doc. 16-9, at 163). She alleges that another supervisor testified that Smith had failed to state on her application that she had been convicted of a felony. These allegations, at the very least, are consistent with the general premise that USG terminated her based on her criminal record, whenever that information came to light. At most, these allegations show a questionable business decision by terminating a qualified employee based on a newspaper article detailing the circumstances of an aggravated assault conviction. Even accepting Smith's allegations and conclusions as true, the record does not establish that gender discrimination was even a slight motivation in her termination. Accordingly, it is recommended that summary judgment as to Smith's Title VII claim be granted in favor of Defendant, USG.

### C. PENNSYLVANIA HUMAN RELATIONS ACT CLAIM

In addition to the Title VII discrimination claim, Smith also alleges that USG has engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1). A district court may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C § 1367(a) if the claim substantially predominates over claims that the

district court has original jurisdiction, or if the district court has dismissed all of the claims over which it has original jurisdiction. Having recommended dismissal of Smith's Title VII claim, it is further recommended that this Court exercise its discretion, pursuant to 28 U.S.C. §1367(c), to decline supplemental jurisdiction over Smith's PHRA claim. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

## II. R<span>ECOMMENDATION</span>

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment (Doc. 15) be **GRANTED** as to Smith's Title VII discrimination claim. It is further recommended that this Court decline to exercise supplemental jurisdiction over Smith's Pennsylvania Human Relations Act claim.

Dated: October 17, 2014                                            *s/ Karoline Mehalchick*
                                                                   **KAROLINE MEHALCHICK**
                                                                   **United States Magistrate Judge**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTEEN SMITH,<br><br>    Plaintiff<br><br>v.<br><br>UNITED STATES GYPSUM COMPANY,<br><br>    Defendant | CIVIL ACTION NO.4:13-CV-02122<br><br>(BRANN, J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **October 17, 2014**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: October 17, 2014**                                     *s/ Karoline Mehalchick*
                                                                                **KAROLINE MEHALCHICK**
                                                                                **United States Magistrate Judge**